**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

JACK FREEMAN
ADC #140176                                                                                           PLAINTIFF

V.                                   CASE NO. 1:14-CV-00018 JLH/BD

CHRISTOPHER BUDNICK, et al.                                                            DEFENDANTS

**RECOMMENDED DISPOSITION**

**I.      Procedure for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes.  Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.  An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing the record.  By not objecting, you may also waive any right to appeal questions of fact.

## II.     Introduction:

Jack Freeman, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit pro se under 42 U.S.C. § 1983. (Docket entry #2) Mr. Freeman claims that while he was assigned to punitive isolation, Defendants violated his first amendment rights by rejecting his request for certain items of personal property that he says are needed to practice his religion, Odinism. The items Mr. Freeman requested included: a Thor's hammer or amulet, a set of runes with a guide book, a rune cloth, an Odinist text, an altar or table, an altar cloth, a plastic bowl, mead, a mead horn, a rune staff, a hammer, and a wooden statue. (#2 at pp. 4, 7) Mr. Freeman sued Christopher Budnik, Joe Page, Marvini Evans, and John Wheeler (hereinafter "Defendants") in their personal capacities and seeks injunctive relief. (#2 at p. 2, 6)

Defendants have moved for summary judgment on Mr. Freeman's claims. (#20) Mr. Freeman has responded to the motion, arguing that Defendants' summary judgment motion is untimely. (#24)

For the reasons explained below, the Court recommends that Defendants' motion (#20) be granted and that Mr. Freeman's claims be DISMISSED, without prejudice.

## III. <u>Discussion</u>:

A. Standard

A party is entitled to summary judgment when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is not a genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving party must first present evidence that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must come forward with evidence showing that there is a genuine dispute that must be decided at a trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the nonmoving party does not submit enough proof to establish a necessary element of a claim or defense, the moving party is entitled to judgment on that claim. *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

B. Timeliness of Defendants' Motion

In his response to the Defendants' motion for summary judgment, Mr. Freeman argues that the motion should be denied as untimely. At Mr. Freeman's request, the Court granted a sixty-day stay in the case and reset the dispositive motions deadline to January 12, 2015. (#17) Defendants' motion was timely filed on January 12, 2015. (#20)

Accordingly, Mr. Freeman's argument that Defendants' motion was untimely is not well taken.

    C.    Jurisdiction

Mr. Freeman has sued Defendants in their personal capacities only. (#2 at p. 2) In his prayer for relief, Mr. Freeman seeks only injunctive relief. He asks the Court to order: (1) changes to ADC policy 09-14; (2) the chaplain to supply the items he has requested; (3) changes to the chaplain manual to fit Odinist beliefs; and (4) that all changes be overseen and approved by an Odinist priest or priestess. (#2 at p. 6)

Under 42 U.S.C. § 1983, a plaintiff may seek prospective injunctive relief against state actors in their *official* capacities. See *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347 (1974) (emphasis added). But because "[a] victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him," § 1983 does not permit individuals to seek prospective injunctive relief against state actors in their personal capacities. *Kentucky v. Graham*, 473 U.S. 159, 167–68, 105 S.Ct. 3099 (1985); see also *Andrus Ex. Rel Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) (Eleventh Amendment does not bar official-capacity claims for injunctive relief against state officials); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) ("attempt to obtain declaratory and injunctive relief from the defendants in their personal capacities fails to state a claim upon which relief may be granted").

Because Mr. Freeman has sued Defendants in their personal capacities only and seeks only injunctive relief, the Court cannot grant the relief he requests. Even if this Court were to grant the requested relief, these Defendants (two deputy wardens, a deputy director, and an administrator) would be unable to change the ADC's punitive isolation and chaplain service policies. Changes to these policies require the vote of the Board of Correction and ratification by the Director. (#20-3 at p. 1) Even if Mr. Freeman had sued the Defendants in their official capacities, his first amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims would still fail.

D.   First Amendment and RLUIPA

According to the allegations in the Complaint, at all times relevant to this lawsuit, Mr. Freeman was a member of the Odinist faith and was housed in punitive isolation at the Grimes Unit of the Arkansas Department of Correction. (#2 at p. 3, #20-1) Mr. Freeman was known to ADC officials as a self-mutilation risk and a member of a security threat/terrorist group. (#20-1, #20-2)

ADC policy states that inmates housed in punitive isolation may keep in their cells one religious text and one self-help text. (#20-3 at p. 1) Personal property privileges are restored to inmates housed in punitive isolation for 48 hours every 30 days. (#20-1 at p. 2)

ADC policy also provides that an inmate can possess certain religious items as personal property, unless the items threaten the good order of the institution. (#20-5)

Items designated for Wiccan or Odinist religions, such as a religious text, a small bell, and a chalice, are allowed to the extent they do not create security threats. (#20-5 at pp. 2-4) Runes are available for worship, but only in the unit's chapel where the items must be stored. (*Id*.) Items that display symbols associated with a security-threat group may be allowed, but not if the requesting inmate is affiliated with a security-threat group. (*Id*. at p. 3)

ADC policy does not allow inmates to possess symbols associated with security-threat groups if they are affiliated with a security-threat group. (#20-2 at p. 2) The policy is designed to prevent inmates from using the symbols to communicate regarding gang activity or to show gang allegiances. (*Id*.) ADC policy does not permit inmates to keep runes as personal property because they can be used for gambling or as currency. (*Id*.)

The test for deciding Mr. Freeman's first amendment claim is whether there is evidence that his religious beliefs were substantially burdened when the Defendants denied him access to these religious items while housed in punitive isolation. In order to find that a prison regulation "substantially burdened" an inmate's ability to exercise his religion, the regulation:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (quotation and alterations omitted).

Mr. Freeman asserts that ADC policy permitting only one religious text in punitive isolation does not allow him to "correctly follow my beliefs" (#2 at p. 4), but he has not come forward with evidence showing that any central tenet of his religion was impinged as a result of the Defendants' conduct. According to ADC policy, Mr. Freeman had access to one religious text at all times and to other religious items during his forty-eight-hour release from punitive isolation.

Even assuming that the ADC regulation prohibiting the possession of certain religious items in punitive segregation placed a "substantial burden" on Mr. Freeman's free exercise rights, the regulation at issue is "reasonably related to a legitimate penological interest," and his claim would fail, as a matter of law.

A regulation that infringes an inmate's free exercise rights will survive a constitutional challenge if prison administrators can establish that the regulation is a rational means of furthering a legitimate penological interest. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987)).

In *Turner*, the Supreme Court set out four factors to consider in determining whether a prison policy or regulation that infringes on a first amendment right is permissible: (1) whether there is a valid, rational connection between the regulation and


the legitimate government interest? (2) whether there are alternative avenues available for the exercise of the right infringed upon? (3) the effect would an accommodation have on others? and (4) whether there ready alternatives to the regulation? *Turner,* 482 U.S. at 89-91 107 S.Ct. at 2261-2262.

Here, there is a "valid rational connection" between the policy limiting the property inmates may retain while housed in punitive segregation and the ADC's interest in maintaining the safety and security of each unit. Defendant Christopher Budnik, a Deputy Warden of the Grimes Unit responsible for monitoring activities of security threat/terrorist groups, stated that Mr. Freeman was an admitted member of White Aryan Resistance, a recognized security-threat group. Accordingly, Mr. Freeman would not have been allowed to possess many of the items he sought, even outside of punitive isolation. (#20-2)

Further, Mr. Freeman was known as a risk for self-mutilation.[1] (#20-1 at p. 2) Defendants' denial of such items as a Thor's hammer or amulet, a rune cloth, an altar or table, an altar cloth, a rune staff, a hammer, and a wooden statute appear to be rationally related to preventing injury to inmates housed in punitive isolation where there are increased security concerns and suicide risks.

---

[1] The Court notes that Mr. Freeman requested a stay of his case while he was on suicide watch. (#16)

Mr. Freeman had an alternative means available to exercise his rights. He was allowed to keep one religious text and had access to other permissible personal property during his forty-eight-hour release from isolation every thirty days.

The Court must also determine what effect accommodating Mr. Freeman would have on other inmates and guards. This factor weighs in favor of the Defendants. If inmates were permitted to keep items such as hammers while in segregation, there would be a need for additional security.

There is no ready alternative available to fully accommodate Mr. Freeman's free exercise rights while housed in punitive segregation that would impose a "de minimis cost to valid penological interests."

Because Mr. Freeman has failed to come forward with any evidence to create a genuine issue of material fact, his First Amendment claim fails as a matter of law.

To the extent Mr. Freeman has alleged a claim under RLUIPA, it would also fail. RLUIPA "protects institutionalized persons who are unable to freely attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 (2005). While the government must meet a higher burden in RLUIPA claims than for first amendment claims, the law still affords "'a significant degree of deference to the expertise of prison officials in evaluating whether they met that

burden.'" *Gladson v. Iowa Dep't of Corrections*, 551 F.3d 825, 832 (8th Cir. 2009) (quoting *Murphy v. Mo. Dept. of Corrections*, 372 F.3d 979, 987).

Here, while housed in punitive isolation, Mr. Freeman requested a number of items in addition to the one religious text he was allowed to practice Odinism.  Mr. Freeman has not shown how the denial of his request substantially burdened his rights to exercise his religion.  Further, ADC officials denied his requests for legitimate penological goals of Mr. Freeman's safety as well as the safety of other inmates and the security of the unit.  For these reasons, Mr. Freeman's RLUIPA claim fails.

### IV.   Conclusion:

The Court recommends that Defendants Joe Page, Chris Budnik, Marvin Evans, and John Wheeler's motion for summary judgment (#20) be GRANTED and Mr. Freeman's claims be DISMISSED, without prejudice.

DATED this 4th day of March, 2015.

_____
UNITED STATES MAGISTRATE JUDGE